**James A. RANK, Jr., Petitioner,**

v.

**Major General Roland M. GLESZER, Respondent.**

**Civ. A. No. C–998.**

United States District Court
D. Colorado.

Aug. 9, 1968.

William L. Carew, Colorado Springs, Colo., for petitioner.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

Petitioner is currently a member of the Kansas National Guard, in which he enlisted in March 1964. He seeks a writ of habeas corpus to effect his release from the military on the grounds that he is physically unfit for military service. His petition alleges he suffers from several afflictions, including a back injury, an active duodenal ulcer, diabetes, bleeding hemorrhoids, and high blood pressure.

After several physical examinations by the military, petitioner's case was heard by an Army Physical Evaluation Board at Fitzsimons Army Hospital in Denver on July 1, 1968. The finding of that board was that he was fit for military service. Apparently neither petitioner nor his counsel were present at the hearing.

Petitioner has asked for a rehearing by the Physical Evaluation Board to present additional evidence in his behalf. He also seeks judicial relief from this court, alleging that the findings of the Physical Evaluation Board were arbitrary and capricious and in violation of his constitutional rights.

Petitioner is not challenging the validity of his enlistment in the military. He is merely seeking discharge prior to his scheduled discharge date for alleged reasons of physical unfitness.

■ Under 10 U.S.C. 3811(b) Congress has given the Secretary of the Army power to grant discharges to enlisted members prior to expiration of their term of service. This power is an indication that Congress intended the question of which members merit discharge to be within the discretion of the Secretary rather than the courts. While 10 U.S.C. Chap. 61(secs. 1201–1221)— Retirement or Separation for Physical Disability—provides for disability benefits and for separation or retirement of physically unfit persons in some circumstances, these statutory provisions also clearly contemplate that the decision as to who is physically fit or unfit is to be a discretionary one to be made by the Secretary of the appropriate service or his delegated representatives.

Against this background of apparent Congressional intent that the decision of separation of military personnel should be primarily that of the executive arm, we are confronted at the outset with the question of jurisdiction of a civil court to grant habeas corpus relief to persons challenging their retention in the military.

■ This court has taken the position that where all administrative recourse has not been explored the court will not pass on the question of jurisdiction to grant relief. *Noyd v. McNamara,* 267 F.Supp. 701, aff'd 378 F.2d 538 (10th Cir.), cert. den., 389 U.S. 1022, 88 S.Ct. 593, 19 L.Ed.2d 667 (1967). This decision reflects a well-established judicial

policy of abstaining from interfering in military affairs.

■ The judicial reluctance to assert jurisdiction over the question of a man's retention in the military is based upon the recognition that the military constitutes a separate administrative system within the executive branch, and that a man who becomes a part of the military thereby acquires a status which subjects him to a whole new system of laws and regulations. Most importantly, the policy of judicial non-intervention in the affairs of the military is based on the recognition that the military is best left to solve its own problems within its administrative system. As stated by the Supreme Court in *Orloff v. Willoughby,* 345 U.S. 83, 73 S.Ct. 534, 94 L.Ed. 842 (1953):

> "We know that from top to bottom of the Army the complaint is often made, and sometimes with justification, that there is discrimination, favoritism or other objectionable handling of men. But judges are not given the task of running the Army. The responsibility for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters." 345 U.S. at 93, 73 S.Ct. at 540.

There are some unusual circumstances in which the courts have intervened in the conduct of the affairs of the military system. *Orloff v. Willoughby,* supra (challenge to the validity of induction into the Army); *Harmon v. Brucker,* 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958) (allegation that the military had exceeded its lawful authority); *Wolff v. Selective Service Board No. 16,* 372 F.2d 817 (2nd Cir. 1967) (judicial

assessment on merits of activities of Selective Service Board because of threat to First Amendment freedoms).

The present case does not involve any such unusual circumstances. At issue here is the soundness of the determination of an administrative board within the military system. The Army regulations (AR 635–40), though none too clear, appear to provide for review of this determination and final approval or rejection by the Secretary of the Army.[1]

■ While we are not unsympathetic with the apparent plight of petitioner, it must be recognized that this court would be ill-equipped to second guess the Army as to physical fitness for military duty. In any event, until it is clearly apparent that the determination of petitioner's fitness is a final one and that he has no more recourse to relief within the Army, this court cannot reach the question of its jurisdiction to provide judicial relief.

The motion for an Order to Show Cause is denied, and the cause of action is dismissed.

1. The pertinent Army regulation (AR 635–40) is somewhat unclear as to what occurs in the event a man if found fit for service by a Physical Evaluation Board. In Chap. 9 of this regulation, (Expeditious Discharge for Disabilities Existing Prior To Service) sec. 9–4(d) provides:

"Upon review of the case, however, if the physical evaluation board finds the member to be physically fit, he will be returned to duty without entitlement to further hearing. * * *"

Petitioner has cited this section of the regulation to the court as proof that he has exhausted his administrative remedies.

However, Chapter 4 of the regulation, which delineates the procedure and function of physical evaluation boards, states that any determination made by a physical evaluation board is not a final determination until approved or rejected by the Secretary of the Army. The regulation also provides a system of review of determinations of physical evaluation boards. Such determinations are first supposed to be reviewed by an Army Physical Review Council, and in some

cases review of the Review Council's decision is available through the Army Physical Disability Appeal Board. From one of these two bodies, the case is forwarded to the Adjutant General, who acts for the Secretary of the Army. Although review of a determination of a PEB before these bodies may not be of much assistance to the person being evaluated (because sec. 5–1(b) of the regulation provides that the member or his representative are not permitted to appear before the Army Physical Review Council or the Army Physical Disability Appeal Board) until the determination of fitness is finalized by the Secretary, petitioner's administrative remedies are not closed.

Additionally, section 4–34 of AR 635–40 permits, though does not require, the reconvening of physical evaluation boards at any time before final action is taken on a case by the Secretary of the Army. Since the petition indicates that the physical evaluation board did not have before it all the facts which petitioner has tendered to this court, it may be that the board will grant petitioner's request for re-hearing.