**Paul G. HACKETT**

v.

**Secretary of Defense, Melvin LAIRD et al.**

**Civ. A. No. SA–71–CA–59.**

United States District Court,
W. D. Texas,
San Antonio Division.

May 3, 1971.

Gerald H. Goldstein, Levey & Goldstein, San Antonio, Tex., for plaintiff.

Seagal V. Wheatley, U. S. Atty., by Henry Valdespino, Asst. U. S. Atty., San Antonio, Tex., for defendants.

## MEMORANDUM OPINION

JOHN H. WOOD, Jr., District Judge.

In this Application for Writ of Habeas Corpus, Petitioner seeks separation and discharge from the U. S. Army alleging that he is a 1–O conscientious objector and as such that he is being unlawfully restrained and deprived of his liberty by the Respondents because the Department of the Army denied his request to be discharged as a 1–O Conscientious Objector.

While a student at the University of Toledo, Toledo, Ohio, Petitioner requested a 1–A–O classification in March, 1970 from his local Selective Service Board. This request was granted by the Board on March 29, 1970. Subsequently, the Petitioner was inducted into the U. S. Army on July 27, 1970 as a 1–A–O Conscientious Objector and assigned to medic training. On November 3, 1970, Petitioner made formal Application for Discharge as a 1–O Conscientious Objector and said Application was denied on Jan-

uary 27, 1971 by the United States Army Conscientious Objector Review Board pursuant to Army Regulation No. 635–20 4(c). As grounds for denial of the Application the Army Review Board stated that "Applicant lacks the depth of conviction required to qualify for discharge as a Conscientious Objector." The Petitioner, Private Paul G. Hackett, Serial Number 286–42–5145, is currently assigned to Headquarters and Headquarters Company, Receiving & Holding, U. S. Army Medical Training Center, Fort Sam Houston, Texas and is presently under the control of the Respondents at the Medical Field Service School, Brooke Army Medical Center, Fort Sam Houston, Bexar County, Texas.

The Petitioner's Application for 1–0 status indicates that he was reared in a devoutly Roman Catholic home by his parents. Private Hackett attended Catholic primary and secondary schools in the City of Toledo, Ohio and after his graduation from St. Francis de Salles High School in June of 1968 he entered the Novitiate of the Oblates of St. Francis de Salles, a Catholic Seminary. While in the Seminary, Petitioner states that he was greatly influenced by his religious training especially such authors as St. Francis de Salles, St. Francis of Assisi, St. Augustine and Father Leilhard Chardin. Petitioner remained in the Seminary approximately nine months. He subsequently became a student at the University of Toledo.

Private Hackett's Application is replete with statements concerning the formulation of the religious beliefs he currently holds, the philosophers and teachings he relies upon and supporting statements and letters from his family, relatives, priest and friends corroborating not only the sincerity of his convictions, but also the length of time he has steadfastly held these beliefs. Private Hackett's Application further states his abhorrence of war and violence in any form, the contradiction of his beliefs and his duties resulting in the inner struggle he is undergoing as a member of the Armed Forces. He also adds,

"My conviction opposing participation in war and military service became fixed after induction."

Private Hackett was found to have no psychiatric illness or mental disorder by Major John Vanderpool, Psychiatrist at Fort Sam Houston, and his Application was recommended for approval by Colonel Foster C. McCaled, Jr. and by 1st Lt. Donald W. Reuss. Assistant Post Chaplain, Woodrow L. Elias, found that the Petitioner was sincere in his beliefs but did not make a recommendation to the Board.

Major Joe H. R. Wilson recommended disapproval of the Application stating that:

"Upon interviewing Pvt. Hackett, I learned that he had no major change of religious convictions since his induction as a 1–A–0. He revealed to me that he is willing to financially support the Army and the war effort through payment of Income Tax and believes that there should be medics in the Army and in Vietnam. It is my observation that he lacks a total belief in his inability to conscientiously serve as a medic."

Major M. S. Sorenson also recommending disapproval stated:

"Application reveals no significant change in belief since entry into service. Convictions are noted to be consistent with his present status and no impediment to successful performance of the duties for which he is being prepared."

There is no finding by the Board that Petitioner is insincere in his beliefs. Major Wilson's statement that " * * * he lacks a total belief in his inability to conscientiously serve as a medic" is as near a finding of insincerity as exists in the record, but it is our opinion that there is no basis in fact for such a finding in light of the reasons given by the Major which indicate to this Court that the Petitioner is a law abiding and humane individual. Therefore, sincerity is not the issue here, rather as the Board stated, "Applicant lacks the depth of

conviction required to qualify for discharge as a Conscientious Objector."

■ In Helwick v. Laird (Fifth Cir., February 16, 1971) 438 F.2d 959 the Court of Appeals for the Fifth Circuit has indicated that with the possible exception of conscientious objection arising under the limited situation described in Welsh v. United States, 398 U.S. 335 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970) there may very well not be such a criterion as "depth of conviction". As the Court of Appeals in Helwick v. Laird, supra, stated:

"This (depth of conviction) is a verbalism without any real meaning in this factual context. We are astonished that 'depth and maturity' are prerequisites to conscientious objection to war."

Therefore, it would seem that where one's objection to participation in war in any form is based upon traditional religious beliefs, "depth" no longer serves as a meaningful criteria. "Depth" and "Sincerity" are not synonymous. Rather "Depth" is used as a measuring device to determine the degree of or intensity of "Sincerity" and only applies in cases where the conscientious objection does not arise from a traditional religious belief.

■■ Due to the voluminous number of conscientious objector cases arising in the past few years and the subjective determinations which must be made by the Army interviewers and Review Board as well as the difficulty of interpreting and applying the Regulations, Statutes and case law on the subject, it is little wonder that much confusion exists in the application of the law to this nebulous area of jurisprudence. This would seem to be the situation in the case before the Court. It appears from the Army Review Board's opinion and from the Brief of the Respondents that the recent decision by the Fifth Circuit Court of Appeals in Helwick v. Laird, supra has been misinterpreted or at least misapplied. This misapplication is

particularly apparent in considering Army Regulation 635–20(3) (b) which states that it is the objection itself—the objection to participation in war in any form—that must become fixed only after entry into the Army. The Fifth Circuit in Helwick v. Laird, supra, addresses itself to this Regulation especially to point out that:

"Indeed, the claimant may properly hold the same or similar religious beliefs both before and after his entry into the service. Rather the requirement of A.R. 635–20(3) (b) is that the objection itself—the objection to participation in war in any form—must become fixed only after entry into the Army."

Thus, under this case, the fact that Petitioner's present opposition to participation in war is derived from earlier experiences with religious training is not a basis in fact to doubt the "depth" of his conviction; if anything, it would constitute evidence of greater "depth". It is not required that the *beliefs* become fixed after entry into the service, only that one's *opposition* or *objection* to participation in war become fixed after entry. The words "beliefs" and "objection" are not interchangeable—rather, it is crucial to distinguish when the "objection" to participation in war in any form arose so as to make such participation untenable in relation to the "beliefs" held by the Applicant.

■ The Respondents through their Brief claim that there is evidence in the Application of prior inconsistent statements made by the Petitioner which blur or taint the record, thereby casting doubt on Petitioner's sincerity. This Court holds that no such finding was made by the Conscientious Objector Review Board as to inconsistent statements and that it is well settled that the Board is bound by the reasons it gives for its decisions and where those reasons do not provide a basis in fact for that decision the Courts should not search the record to find other reasons to support the Board's conclusion.

■ Inconsistencies, or prior inconsistent statements, are relevant factors when determining whether a basis in fact exists for the traditional "sincerity" criteria since that criteria goes to the truthfulness or veracity of the Petitioner. Thus, a prior inconsistent statement would go directly to a determination of his truthfulness or veracity. This is a time honored impeachment device and would in the usual case reflect on a party's sincerity; however, it would appear that the traditional sincerity test no longer applies to alleged Conscientious Objectors since Helwick v. Laird.

In the case before the Court no one even used the word "sincerity" or lack of it, or even questioned in the slightest the truthfulness of Hackett. As pointed out before, the only question raised by the Review Board was whether Petitioner's convictions were held with the "depth" or "strength" required under the recent Supreme Court decision in Welsh v. United States, supra. That decision established the test for claims based on non-religious beliefs.

■ When we are determining whether Petitioner was truthful (i. e., whether he believes what he says he believes) the prior inconsistent statements are a relevant criteria. However, where we are determining, even if in fact Petitioner believes what he says he does, whether those beliefs are held with the "depth" and "strength" of traditional religious beliefs, then prior inconsistent statements are not valid considerations since truth and veracity are not in question.

In a recent decision by the Court of Appeals in United States v. Coffey (9th Cir., July 13, 1970, 429 F.2d 401), the Court spoke to this very distinction, pointing out inconsistent statements might be a valid criteria where the question was the traditional one of "sincerity" but that it would not be a relevant criteria where the question was the "depth" with which those beliefs were held.

"First, it might have determined that Coffey did not in fact believe what he said he did * * * The local board might have based such a determination, for example, *upon prior statements or actions of Coffey inconsistent with his stated beliefs*.

"Second, the board might have determined that, though Coffey in fact believed what he said he did, his belief was not 'deeply held' within the meaning of Welsh, supra—i. e., that despite his beliefs he could bring himself to kill in war, or that the penalty for violating his beliefs would have been only a few pin pricks of conscience, as opposed to the stern remorse which the Welsh test requires."

The Respondents in the case before the Court also submit that Petitioner's self-serving statement in his application, to-wit: "My conviction opposing participation in war and military service became fixed after induction." is in no way analogous to the crystallization and change shown in the cases of applicants who qualified for the classification.

The Fifth Circuit Court of Appeals in Helwick v. Laird, supra, seems to clearly point out that where the Petitioner makes a claim that his views toward participation in the Armed Services have changed since his entry into the military and there is nothing in the record to refute that claim, then there is no basis in fact for a finding that the Petitioner's views toward participation in war has not changed. The Court of Appeals specifically states:

"Summed up then, we can find no evidence in the record to cast doubt upon Helwick's claim that his views toward participation in the Army have changed since entering the service. Therefore, we are obliged to hold that there is no basis in fact for the Board's second finding."

A search of the record in the instant case reveals nothing substantial to refute Private Hackett's claim or to cast doubt upon his sincerity as to the time when his convictions opposing participa-

tion in war became fixed and accordingly this self-serving statement by the Petitioner would appear to meet the requirements set out in Helwick v. Laird, supra.

This Court is not unmindful of the Respondents' argument that this Court's interpretation of Helwick v. Laird, supra, would make it impossible for the military to refute and thus deny the application of any alleged conscientious objector.

In Helwick v. Laird, supra, Judge Wisdom, speaking for the Court holds:

"Therefore in this case—indeed, as in all conscientious objector cases— the threshold question for review is the sincerity of the claimant in objecting, on religious grounds, to participation in war in any form. *Sincerity is of course a subjective question.*" (Citing cases) (Emphasis supplied.)

Then Judge Wisdom says:

"* * * *There must be some facts in his application—hard, provable, reliable facts—that provide a basis for disbelieving the claimant.* As this Court said in a Selective Service case,

'the disbelief of Selective Service officials will not justify the rejection of a claim for conscientious objector status unless there is some affirmative evidence to support the rejection of the claimed exemption or there is something in the record which *substantially* blurs the picture painted by the registrant and thus casts doubt on his sincerity. Batterton v. United States, 8 Cir. 1958, 260 F.2d 233.' " (Emphasis added.)

Under the holdings in the Helwick v. Laird case above, how can a Review Board ever have available from the serviceman's application "hard, provable, reliable facts—that provide a basis for disbelieving the claimant"? The practical impossibility of the Board's burden is apparent. This is especially true since most of the applications are pre-

pared with the help and advice of competent legal counsel.

## CONCLUSION

In conclusion, we feel that under this Court's interpretation of Helwick v. Laird, supra, there will be no cases in the future where the sincerity of the Petitioner could be legally challenged. In other words, if the application and any endorsements thereon by the Government were the only document to which the Review Board could legally turn to determine "insincerity" vel non, the "basis in fact" doctrine is destroyed as a practical and effective means of retaining "insincere objectors" in the service. This Court is rather inclined to agree that to believe a Petitioner would prepare his application in such form as to include "hard, provable, reliable facts —that provide a basis for disbelieving the claimant" would be too cavalier for any sincere adversary's belief.

When reviewed as a whole and as summarized in Helwick v. Laird, supra, the case law regarding conscientious objectors has recently undergone such catastrophic change so that the relevant statutes have become merely mutations and hybrids of their original form and intent. The law in this area has further been reduced to semantical distinctions of intricate, subjective concepts. To attempt to analyze, define and evaluate the sincerity of another's religious philosophy and the thought processes and time sequence from which these convictions were derived would be a well nigh impossible task for a St. Augustine or Thomas Aquinas much less for the military interviewer or a Trial Court whose only access to this information is the Application of the applicant.

With the virtual elimination of tests such as "depth of conviction" and "significant change of beliefs"; the confusing distinctions which must be made between "belief" and "objection" or "depth" and "sincerity"; the ability of the applicant to rely on subjective self-serving statements and the military having the burden of proof by

"hard, provable, reliable facts"; and the reviewing court being limited to only the record and the "basis in fact" test as now narrowly defined, it is impossible for this Court to imagine how any petition for discharge from the military on conscientious objector grounds could practically be denied by the Review Board.

 While it is thus apparent that we cannot agree with the onerous burden which the law now imposes on the Review Board, this Court has no choice but to follow the holding of the Fifth Circuit in Helwick v. Laird and it is, therefore, accordingly ordered that the Petition for Writ of Habeas Corpus be granted herein and that the Petitioner, Pvt. Paul G. Hackett, be discharged from the custody of the United States Army and from the custody of Respondents. The effective Order is stayed for thirty (30) days to permit Respondents to appeal if they so desire.